# Lee *v.* The State.

*Assault With a Weapon.*

(Decided Jan. 9, 1912. 57 South. 395.)

1. *Assault and Battery; Instructions.*—A charge asserting that if the accused was free from fault in bringing on the difficulty and honestly believed that his life was in imminent peril, and that it was necessary for him to act immediately to save his life, he must be acquitted, was properly refused because to act immediately might mean something other than to shoot the prosecutor, and if that phrase negatived the idea that the accused could avoid the combat by retreat, it was not a clear statement of the law.

2. *Same.*—A charge asserting that if the accused, prior to the difficulty, talked with a witness, and asked him to see the prosecutor and have him not bother the accused, and the witness saw prosecutor and asked him not to give the defendant any trouble, and the prosecutor replied, "Damn him," then that fact might be weighed in determining who was the aggressor, was bad and properly refused.

3. *Charge of Court; Meaningless Instruction.*—A charge which uses the word "inconsistent" where the word, "consistent" should be used, is rendered meaningless and properly refused.

[Lee v. The State.]

APPEAL from Montgomery City Court.

Heard before Hon. ARMSTEAD BROWN.

Fred Lee was convicted of assault with a weapon, and he appeals. Affirmed.

The following charges were refused to the defendant: (11) "The court charges the jury that before they can convict the defendant they must be satisfied to a moral certainty, not only that the proof is inconsistent with the defendant's guilt, but that it is wholly inconsistent with every other rational conclusion; and unless the jury is so convinced by the evidence of the defendant's guilt that they would each venture to act upon that decision in matters of the highest concern and importance to his own interest, then they must acquit the defendant." (12) "The court charges the jury that if, from all the evidence, they find that the defendant did not bring on the difficulty, that he was leaving Mr. Holmes' store in an orderly and peaceful manner, and that Tom Simmons spoke to him in an insulting way, and advanced towards the defendant in such a manner as to indicate to a reasonable mind that his purpose was to do the defendant grievous bodily harm, or to kill him, then the defendant was authorized to anticipate Tom Simmons and shoot him." (13) "The court charges the jury that the law is that when a person is free from fault in bringing on the difficulty, and that he is being attacked by a man of dangerous character, then he is not required to wait until the weapon is presented, ready for deadly use, but to act on the reasonable appearance of same, and fire to kill, if in his mind the danger is real." (14) "The court charges the jury that if they believe from all the evidence that Tom Simmons had made previous threats towards the defendant, and that the defendant was aware of such threats, and that Tom Simmons had the reputation of being a dangerous

and bloodthirsty man, and that Tom Simmons moved towards the defendant in a hostile manner, and that the defendant did not provoke or bring on the difficulty, then it was the duty of the defendant to fire upon Tom Simmons." (15) "If the jury believe from all the evidence in this case that the defendant and Tom Simmons were in close proximity to each other at the time of the difficulty, and that the defendant did not bring on the difficulty, and that Tom Simmons had the reputation of being a dangerous and turbulent and violent man, and that he assumed the hostile attitude towards the defendant, and that the defendant did honestly believe he was about to suffer grievous bodily harm at the hands of Tom Simmons, then the defendant had the right to shoot, and should be acquitted." (16) "The court charges the jury that if from all the evidence they find that the defendant is free from fault in bringing on the difficulty, and that he honestly and reasonably believed that his life was in imminent peril, and that it was necessary for him to act immediately to save his own life or to prevent grievous bodily harm, then the defendant should be acquitted." (17) "The court charges the jury that if they find from all the evidence that the defendant had prior to the difficulty had a talk with the witness ————, and asked him to see Tom Simmons, and have him not to bother or to do him any harm, and that the said witness did see Tom Simmons, and asked him not to give the defendant any trouble, and that Tom Simmons replied by saying, 'Damn him,' then this fact must be weighed by you, in determining who was the aggressor."

H. B. FULLER, for appellant. Charge 16 should have been given.—*Story v. The State*, 71 Ala. 337; *Holmes v. The State*, 23 Ala. 24; *Eiland v. The State*, 52 Ala.

328. On these same authorities the other charges requested should have been given.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State.

DE GRAFFENRIED, J.—The defendant was indicted for assault with intent to murder. He was tried by a jury, found guilty of assault with a deadly weapon, was sentenced to hard labor for Montgomery county, and appeals.

The only questions presented to us for consideration grow out of the refusal of the trial court to give certain charges which the defendant, in writing, requested it to give to the jury.

In charge 16 the defendant requested the court to charge the jury, in substance, that if he was free from fault in bringing on the difficulty, and honestly and reasonably believed that his life was in imminent peril, and that it was necessary for him to act immediately to save his own life, or to prevent himself from suffering great bodily harm, then the jury should acquit him. It may be that "to act immediately" meant "to get out of his assailant's way immediately," or "to retreat immediately," or to do something, other than to shoot his adversary. The charge was patently bad. The words "to act immediately," as used in the above charge, if intended to negative the idea that the circumstances were such that the defendant could not have avoided the combat by retreat, without increasing his peril, certainly do not do so with sufficient clearness.

2. Charge 11 was evidently copied from some charge which had been previously passed upon by the Supreme Court, but by some error, clerical or otherwise, the words "consistent with the defendant's guilt" were

written in the charge, as requested, "inconsistent with the defendant's guilt," which rendered the charge meaningless, and the court properly refused it.

3. Charges 12, 13, 14, and 15 ignore the doctrine of retreat, and were properly refused.

4. Charge 17 was patently bad.

There is no error in the record, and the judgment of the court below is affirmed.

Affirmed.